[No. 15397.   Department Two.   August 9, 1919.]

## In the Matter of the Estate of GEORGE JISKRA, a Nonresident Minor.[1]

GUARDIAN AND WARD — AUTHORITY — INVESTMENTS—LIABILITY.   A guardian for an insane person is liable for money lost through the failure of a bank where, by a specific order, he was directed to invest the money upon real estate security to be approved by the court, and without such approval he invested it in certificates of deposit of such bank, where it remained until the bank failed; and it was immaterial that the trial judge was orally informed of such investment.

Appeal from a judgment of the superior court for Pacific county, Reynolds, J., entered December 11, 1917, in probate, upon final settlement of a guardian's account, holding the guardian liable for a loss. Affirmed.

*John T. Welsh, Fred M. Bond,* and *John I. O'Phelan,* for appellant.

*Herman Murray,* for respondent.

MOUNT, J.—On July 25, 1907, Frank Bert was appointed guardian of the estate of George Jiskra and other minors.  On the 19th day of December, 1912, upon application of the other minors, who had then arrived at the age of majority, the court entered an order requiring the estate of the other minors to be delivered to them, and on that date found that the amount due George Jiskra was six hundred forty-nine dollars and sixty-five cents ($649.65), and entered an order continuing Mr. Bert as guardian of George Jiskra and providing for the investment of the money belonging to the minor as follows:

"That the balance, to wit: $649.65, be invested as follows, be put out at interest, with good and sufficient

[1]Reported in 182 Pac. 961.

security, security to consist of real estate mortgage on property worth not less than $1,000, of which the title shall be perfect, the rate of interest not to be less than six per centum per annum. The payment of both principal and interest to be secured by said mortgage. The security, before being accepted by said guardian to be approved by this court.''

Then, further along in the same order, it is provided as follows:

''It is hereby further ordered that the balance remaining in said estate after the payment of said sums, to wit: the sum of $649.65, to be invested in interest bearing securities, under the order of this court at a rate of interest not less than six per centum per annum; the payment of both the principal and interest to be secured by securities to be approved by this court.''

Thereafter the guardian invested this money in certificates of deposit of the First International Bank of South Bend, Washington, bearing upon their face four per cent interest, but in order to make them bear six per cent interest the difference was credited upon the principal at the time of the deposit. This money remained in the bank until July 19, 1915, when the bank failed. When the minor became of age, the guardian made his final report showing that the sum deposited in the bank had been lost by reason of the failure of the bank, and asked to have that amount credited upon the final account. Objection was filed to the final account, trial was had thereon, and the court concluded that the loss should fall upon the guardian and not upon the ward. The guardian has appealed from that order.

Appellant argues, in substance, that, because he acted in good faith, and because the money was deposited in a bank of good repute, he ought not to be held liable for the loss.

When the distributive share of the estate of this ward was placed in the hands of the guardian, it was placed there under a specific order of the court directing the manner in which it should be invested, namely, to be secured by real estate mortgage on property worth not less than one thousand dollars. It is true, a subsequent part of the same order provided that the money should be invested in interest-bearing securities under the order of this court at a rate of interest not less than six per cent per annum, the payment of both principal and interest to be secured by securities to be approved by the court. This part of the order did not change the order specifically defining the kind of security. So far as the record shows, this investment by the guardian was never approved by the court; and we are satisfied that, when the court made an order directing the guardian to invest the money in certain kinds of securities, and in violation of that order the guardian invested the money in other securities, he took his chances and the loss must therefore fall upon him and not upon the ward. There was some evidence introduced at the trial by the judge who made the order that he was informed by the guardian of the investment in certificates of deposit in the bank; and appellant now argues that a *nunc pro tunc* order should be entered authorizing the investment in these certificates of deposit. But we think it is plain that a conversation of the judge of the court with the guardian did not have the effect of modifying the order of the court originally made. The order as originally made was a signed order entered on the journal, and if the guardian desired to invest the money in some other securities, it was his duty to have the order modified by a subsequent order of the court entered with the usual formalities. It will not do to say that a talk or conversation of a judge of the court may be considered

as an order and entered *nunc pro tunc*, as is here requested.

We are satisfied the trial court properly placed the loss upon the guardian, and the judgment is therefore affirmed.

Holcomb, C. J., Fullerton, Parker, and Bridges, JJ., concur.